IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No: 2:24-cr-60 |
| | : | |
| v. | : | **CHIEF JUDGE SARAH D. MORRISON** |
| | : | |
| NICHOLAS P. DUTY | : | **UNDER SEAL** |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through undersigned counsel, hereby submits its Sentencing Memorandum in advance of the sentencing hearing for the Defendant, Nicholas P. Duty. For the reasons discussed below, the government respectfully submits a sentence at the upper end of the agreed upon range in this case appropriately considers all of the factors this Court is to take into account in fashioning a sentence. The government further suggests the defendant's criminal activities while in a position of trust and authority call for a term of supervised release of three years.

### BACKGROUND

On January 22, 2025, the defendant entered a plea of guilty to Counts One and Two of the Indictment, which charge him with Destruction, Alteration, or Falsification of Records, in violation of 18 U.S.C. § 1519. The Rule 11(c)(1)(C) agreement called for a total term of imprisonment of no less than 18 months but no more than 48 month and a term of supervised release of 3 years. The plea was entered pursuant to plea agreement that contained, as an attachment thereto, an agreed factual statement of the offense conduct in support of the defendant's guilty plea.

In that statement, the defendant admitted in February 2024, he came to the attention of

1

officers with the Columbus Division of Police (CPD) who were working street-level prostitution crimes in the area of Sullivant Avenue on the west side of Columbus, Ohio when they spoke with Witness #1, who expressed concerns about the defendant. A broader investigation into the defendant's activities while he was working as a police officer was initiated and multiple instances in which the defendant obstructed justice and otherwise acted in a manner inconsistent with his responsibilities as a CPD officer were documented. In summary, the reports outlined his inappropriate behavior with women he encountered on the job.

The defendant admitted he met Jane Doe One in October 2023 after she called CPD for assistance to report that her boyfriend was attempting to kill himself. The defendant responded to Jane Doe One's residence and took her into custody for trying to interfere with the efforts of other responding CPD officers to arrest her boyfriend after he became combative with them. The defendant admitted just prior to transporting Jane Doe One, he turned off his BWC but reactivated it upon arriving at CPD headquarters. The defendant then transported Jane Doe One home approximately three hours later and deactivated the in-car camera and his BWC on the drive. Jane Doe One confirmed the defendant hit on her, they exchanged numbers, and he reached out to her after that night.

The defendant next admitted in March 2024, he was working a uniformed assignment as a Columbus Police Officer near Sullivant Avenue and approached Jane Doe Two while in his police vehicle. Jane Doe Two confirmed the defendant had money with him and asked if he wanted to go to their "normal spot" and the defendant relocated to a different alley and met back up with Jane Doe Two. He then removed his BWC equipment and placed it somewhere within the police cruiser, so the BWC was blocked from recording any video and showed just a black screen. The BWC, however, still recorded audio from the interaction which revealed the defendant received

2

oral sex from Jane Doe Two, who declined the defendant's numerous offers to engage in vaginal sex. Jane Doe Two confirmed she received $20 for the sex acts and after the exchange was over, the defendant grabbed his BWC and reattached it to his vest to record as normal.

Finally, the defendant admitted he was relieved of his official job duties as a Columbus Police Officer in March 2024 and later arrested, resulting in the seizure of two devices. Extractions revealed numerous conversations with women the defendant had met as a CPD officer and were either victims of crime or commercial sex workers. Those conversations were sexual in nature and occurred while he was working. He admitted to seeking out sex acts from the various women, attempting to arrange dates and times for the sex acts to occur by asking them where they were located, what they were wearing, and so on. One of the individuals who the defendant contacted was Jane Doe Three, a drug addicted female sex worker, who engaged in sexual contact with the defendant on multiple occasions while he worked third shift as a Columbus Police Officer. She performed oral sex on him multiple times within his police vehicle and the defendant paid her in cash.

The final Presentence Investigation Report ("PSR") was disclosed by the Probation Office on April 16, 2025 and sentencing in this matter is scheduled for March 18, 2025.

## **PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION**

The United States has reviewed the PSR in this case and submits the Probation Officer has correctly calculated the advisory sentencing guidelines. According to the Probation Officer's calculations, the advisory guideline "range" for the defendant is 12-18 months, based on a total offense level of 13, a criminal history category I.

The Probation Officer did not identify any factors that would warrant a departure from the applicable guideline range but did indicate the Court may want to consider certain facts in determining whether a deviation from the guideline range. As indicated above, there is a binding

3

plea agreement in this matter pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure which reflects an agreed range of 18-48 months while the guidelines provide an advisory guideline imprisonment range of 12-18 months. Noting that, the Government believes a sentence at the upper end of the agreed upon range adequately captures the full scope of the defendant's criminal conduct, the seriousness of the offenses he committed, and the defendant's background as well as other factors this Court is to consider. This is outlined more fully below.

## SENTENCING FRAMEWORK AND GUIDELINE CALCULATION

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a three-step sentencing procedure. Courts are first to determine the applicable guideline range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range, along with all of the factors listed in 18 U.S.C. § 3553(a), to determine what sentence to impose. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Section 3553(a) further delineates the seven factors the Court must consider in fashioning an appropriate sentence: (1) the nature and circumstances of the offense/history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges as set forth in the Sentencing Guidelines; (5) Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

## ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

I. *Acceptance of the Parties Agreed Sentencing Disposition*

The offense conduct is at the more serious end of the spectrum as it relates to crimes involving the alteration of records. In this case, the alteration centered around the defendant's deceit, he would lie about where he was and what he was doing in his official capacity as an on-duty Columbus Police Officer and deactivated his department issued BWC and in car camera (ICC) to cover up his nefarious activities, all of which centered on his sexual relationships (or attempts at such) with females he encountered on the job. The sentencing range agreed upon by the parties was in recognition of two competing issues – easing the burden on the victims by resolving this case short of trial and acknowledging the defendant's timely acceptance of responsibility but also acknowledging the possibility of greater sentencing exposure without such an early resolution[1]. Because of this, the agreed upon sentencing range encompasses a much more complete picture of the criminal behavior than the currently applicable sentencing guidelines which focused only on the offense of conviction. The trauma of the consistent, manipulative, and predatory behavior of the defendant towards female victims of crime and drug addicted sex workers has taken its toll. The defendant's prior status as a Columbus Police Officer has brought notoriety to his case, ensuring the victims who were treated as sexual commodities for his pleasure remained shrouded in silence for fear of becoming known themselves or having their victimization publicized.

Given the nature of his offense conduct, the defendant's conduct would undoubtedly call for potentially more serious charges or and a higher sentence if not for his quick acceptance of responsibility. The Sentencing Guidelines recognize that defendants who quickly accept responsibility for their actions should receive credit for such, and the government has placed even

---

[1] This agreement was reached in contemplation of forgoing potential charges against the defendant for Sex Trafficking by Means of Force, Fraud, or Coercion (in violation of 18 U.S.C. § 1591(a)) and Obstruction of a Sex Trafficking Investigation (18 U.S.C. § 1591(d)).

greater weight on that issue in this case. Thus, it is this aspect of the defendant's characteristics—his willingness to spare these victims additional embarrassment by pleading guilty—that the government believes is most significant but, in noting that, also justifies the agreed-upon above the guideline sentence. The upper end of the agreed upon range more fully encompasses the conduct he engaged in while he was in a position of trust abusing that power. It is not the regular practice of the government to reach agreements like this one, but given the full scope of the investigation, the number of women who have come forward about their interactions with the defendant, and the viable potential federal charges aligned with the facts of the case thus far, the government respectfully submits that the upper range outlined in the plea agreement is the proper outcome in this case.

II. *Section 3553(a) Factors*

Subsection (a)(1): Nature and Circumstances of the Offense/ History and Characteristics of the Defendant

The circumstances of the defendant's offense conduct provide significant reasons for his federal charges and the roughly one-and-a-half to four-year recommended sentence. Starting with the facts of the case, the nature of the offense is indisputably egregious and involves a complete disregard for the trust the community places in law enforcement officers such as the defendant. The defendant violated the trust of the public and his own fellow officers. He admitted "he would make sexual advances towards women he encountered while responding to calls for service or someone he observed in the community…and he contacted several of the individuals while off duty as well." (PSR. ¶23). He admitted he was sometimes unable to respond to calls for public help or police assistance in a timely manner or unavailable due to being out of his zone seeking or engaging in sexual act. (PSR. ¶23). The defendant said it best himself, "his actions completely undermined his role as a police officer as he was tasked with working within the community to

6

instill peace, trust, and to assist others." (PSR. ¶24).

This case was initiated after Witness One (also identified as Jane Doe Four in the PSR), was arrested for street level prostitution offenses by an undercover officer. She confirmed she had performed sex acts on the defendant and the circumstances surrounding that were revealed in an interview with her by various law enforcement personnel. Upon her arrest, Jane Doe Four indicated she had information she wanted to share but was hesitant to discuss it because it involved a Columbus Police Officer harassing her. Jane Doe Four confirmed the defendant, who she identified in a photo array, followed her around that she performed oral sex on him. She indicated she was afraid if she did not comply, she would be arrested. What followed after her disclosure was the investigation into the defendant's activities while on duty as a Columbus Police officer.

Due to the statements made by Jane Doe Four in February 2024, law enforcement reviewed the defendant's BWC footage from March 22, 2024. The defendant was marked "out" indicating he was actively working on a call or incident despite the BWC showing he was not. BWC footage revealed the defendant approached Jane Doe Two and then relocated to a different alley on the west side of Columbus. The BWC revealed right before Jane Doe Two entered the defendant's police vehicle, another call for service came in. Dispatch was heard asking for assistance to a burglary alarm in progress call from another unit because the defendant was still marked unavailable. The defendant then responded they could clear him from his previous incident and he would respond to the burglary call, however, instead he requested Jane Doe Two engage in vaginal sex with him. When she declined, citing the fact that she was pregnant, he instead agreed to oral sex which occurred inside his police vehicle. In her conversation with the defendant after the sex acts occurred, Jane Doe Two could be heard discussing her drug addiction issues and admitted while she was sitting in his vehicle, she was "tweaking and geeking". Her and the defendant then

7

discussed how cold it was outside and how Jane Doe Two hated being out there and she was glad to see the defendant so she could "do this" and go back inside with the money he gave her.

The overview of this entire scenario paints a sad picture. Instead of helping a drug addicted pregnant woman coerced by her own severe addiction to engage in sex acts for money in the dead of winter, the defendant took advantage of her to feed his own sexual proclivities. Even sadder is the situation involving Jane Doe One, who met the defendant after calling for help when her boyfriend was threatening suicide. In October 2024, the defendant arrived on scene and placed Jane Doe One in his backseat. Cruiser footage at that time showed her hysterical and hyperventilating and asking for help. Throughout the night, when the defendant had the opportunity to be alone with Jane Doe One, he deactivated his in-car camera and his BWC and used that as an opportunity to prey on a clearly distressed and vulnerable young girl. Jane Doe One was interviewed by law enforcement and she indicated she would ask the defendant for advice on how to deal with her abusive boyfriend. Jane Doe One confirmed after she met the defendant, she and her family noticed a cruiser parked in front of her home on multiple occasions and the cruiser would often flash a spotlight into her windows. She never engaged in sex acts with the defendant, despite his numerous attempts. Tragically, Jane Doe One is now deceased. Less than two months after having her last contact with the defendant, she was killed by her boyfriend – the same one who she called the police to assist with and had been speaking about to the defendant. At the time she was murdered, she was only 19-years-of-age and pregnant with the baby of the man who ultimately beat her to death.[2] Instead of helping her and providing the protection and resources she needed from a police officer, the defendant saw her as a sexual prize he was determined to win despite her declination of his advances. In looking at all the ways in which the

---

[2] https://abc6onyourside.com/news/local/devon-blair-B-D-accused-killing-pregnant-ex-girlfriend-gf-sentencing-dv-charge-domestic-violence-columbus-ohio (last visited May 29, 2025)

8

defendant victimized various females he encountered, it is clear to see why the agreed upon range is appropriate.

      The defendant's history and characteristics are complex. His childhood and upbringing are somewhat unusual for criminal federal defendants, as he was raised by two hardworking and successful parents. The defendant stated his family regularly attended church and attended his sports events throughout his childhood and were loving and supportive. (PSR. ¶47). He had two brothers and a sister, but his sister passed away from a drug overdose as a result from abuse she had endured in her childhood. (PSR. ¶48). The defendant explained his mother suffered severe depression after the loss of her daughter, and their family had to provide her with substantial emotional support. (PSR. ¶48). He had two tumultuous marriages which were marked by his infidelity, alcohol abuse, and addiction to sex. (PSR. ¶¶49-56). The defendant advised his sex addiction took control over his life in 2018 as he was constantly seeking and making sexual advances towards other women to satisfy his addiction. (PSR. ¶63). That same year he became a Columbus Police Officer, a career he had dreamed about holding, and one that ultimately ended, much like his marriages, because of his sex addiction - an addiction that caused him to prey on vulnerable females he encountered on his day-to-day activities as a police officer.

      Prior to that, he had a successful life that provides no significant mitigating aspects. Indeed, as a police officer with a family member who suffered from addiction issues, he was undoubtedly aware of the physical and mental trauma the victims he manipulated were exposed too and his background suggests he should be held to a higher standard, again calling for a sentence at the upper end of the agreed upon range. In addition, while the defendant received the benefit of the zero-point offender reduction (U.S.S.G. § 4C1.1(a)) for having no prior criminal convictions, the PSR established that there have been prior interactions that could have led to criminal

9

charges. Over a period of slightly more than two years, the defendant and his second wife were involved in at least five incidents where law enforcement responded to "domestic disturbances" (some of which included allegations of physical abuse). (PSR ¶¶ 51-55). The defendant was never charged with any offense, avoiding the arrests that often occur in similar situations. At the very least, these repeated incidents which included intoxication and calls for law enforcement intervention, reveal the defendant did not alter his troublesome behavior despite the potential of criminal consequences

<u>Subsection (a)(2): Statutory Purposes of Sentencing</u>

In fashioning a sentence that is "sufficient, but not greater than necessary," the Court is directed in 18 U.S.C. § 3553(a)(2) to consider the need for the sentence to:

> (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In light of the specific facts of the case and this particular defendant's background and history, a sentence at the upper end of the agreed upon range is necessary to properly reflect the seriousness of the defendant's offense, promote respect for the law, and provide just punishment. As reflected in the discussion of the nature of the defendant's conduct above, the defendant's offense is a serious one, and a sentence of commensurate seriousness is necessary to satisfy this sentencing factor. Deterrence and protection of the public, particularly the vulnerable females who are the victims of the defendant's offenses, also reflect the need for a term of imprisonment. The defendant's conduct caused real and significant harm and distress to those who encountered and those he failed to help which warrants a significant sentence, greater than the guidelines as calculated by the sentencing guidelines.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the United States respectfully recommends the Court impose a sentence at the upper end of the range agreed to by the parties in the plea agreement. The United States further submits that the Court should consider a term of supervised of three years because the Defendant's criminal activities occurred while in a position of trust and authority.

KELLY A. NORRIS
Acting United States Attorney

 s/*Emily Czerniejewski*
**EMILY CZERNIEJEWSKI** (IL 6308829)
**KEVIN KELLEY** (OH 0042406)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 406-3572
Email: Emily.Czerniejewski@usdoj.gov
Email: Kevin.Kelley@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served electronically this 2nd day of June, 2025, upon counsel for the Defendant.

 s/*Emily Czerniejewski*
**EMILY CZERNIEJEWSKI (IL 6308829)**
Assistant United States Attorney